GARY SCHWARTZBACH, Plaintiff-Appellee v. APPLE BAKING COMPANY,
Defendant-Appellant

No. 9119SC786

(Filed 2 March 1993)

1. **Corporations § 93 (NCI4th)— plaintiff as sole director of defendant—stock repurchase "agreement"—agreement not just and reasonable to defendant**

In an action for enforcement of an alleged stock repurchase "agreement" between plaintiff and defendant corporation which purportedly required defendant to buy plaintiff's 167⅔ shares of stock at $1,000 per share in the event that plaintiff was removed as president of defendant, the trial court erred by not granting defendant's motion for judgment n.o.v., since plaintiff failed as a matter of law to carry his burden of showing that the "agreement" in question, adopted at a special meeting of defendant's "board of directors" at a time when plaintiff was the sole director of defendant, was just and reasonable to defendant within the meaning of N.C.G.S. § 55-30(b)(3). N.C.G.S. § 55-35.

**Am Jur 2d, Corporations §§ 1736, 1744.**

2. **Corporations § 94 (NCI4th)— director's transaction involved— award of punitive damages not automatic**

An award of punitive damages is not an automatic right of a party who successfully establishes the invalidity of an adversely interested director's transaction under N.C.G.S. § 55-30, and the trial court correctly instructed the jury that it must find aggravating circumstances in order to award punitive damages.

**Am Jur 2d, Corporations § 1740.**

Appeal by defendant from judgment entered 1 March 1991 in Rowan County Superior Court by Judge Thomas W. Seay. Heard in the Court of Appeals 26 August 1992.

Plaintiff filed this action on 20 November 1989, seeking enforcement of an alleged stock repurchase "agreement" between him and defendant corporation, Apple Baking Company. Defendant filed an answer and counterclaim. In its counterclaim, defendant sought

## SCHWARTZBACH v. APPLE BAKING CO.

[109 N.C. App. 216 (1993)]

to void the alleged stock buy-back "agreement" and to require the plaintiff to pay back a $7,500 cash bonus which plaintiff had received in December of 1987. The counterclaim also sought punitive damages and the return of $23,400 of severance pay which plaintiff had received in September of 1988.

At the time the alleged buy-back "agreement" was entered into, plaintiff held approximately 16 percent of Apple Baking Company's 1,000 outstanding shares of stock. Besides being a major stockholder, at the time the alleged "agreement" was made, plaintiff was also both the president and the sole director of the corporation.

The alleged buy-back "agreement" in question purported to obligate defendant to buy back 167 and 2/3 shares of plaintiff's stock at $1,000 per share in the event that plaintiff was removed as president of defendant corporation. On 26 August 1988, the shareholders enacted a new slate of directors. On 8 September 1988, the new directors held a meeting and removed plaintiff from his position as president of the company. Subsequent to his removal, plaintiff informed the shareholders of his alleged buy-back "agreement." Defendant's newly-elected board of directors refused to honor the alleged "agreement," and plaintiff eventually filed this suit in an effort to obtain its enforcement.

At trial, at the close of plaintiff's evidence and at the close of all the evidence, defendant made a motion for directed verdict, which was denied. The jury returned a verdict enforcing the stock buy-back "agreement," but also awarded the company $7,500 on its counterclaim. Judge Seay denied defendant's motion for judgment notwithstanding the verdict or, alternatively, motion for a new trial. On 28 March 1991, defendant filed notice of appeal from the judgment filed 1 March 1991, and the order denying defendant's motion for judgment notwithstanding the verdict or, alternatively, motion for a new trial.

*Kluttz, Hamlin, Reamer, Blankenship and Kluttz, by Malcolm B. Blankenship, Jr., for plaintiff-appellee.*

*Ferguson, Stein, Watt, Wallas, Adkins & Gresham, P.A., by James E. Ferguson, II, for defendant-appellant.*

SCHWARTZBACH v. APPLE BAKING CO.

[109 N.C. App. 216 (1993)]

WELLS, Judge.

[1] In one of its assignments of error, defendant contends that the trial court erred by not granting its motion for judgment notwithstanding the verdict as to plaintiff's claim. We agree, and reverse that part of the trial judgment below. N.C. Gen. Stat. § 1A-1, Rule 50(b)(1) of the Rules of Civil Procedure provides that a motion for judgment notwithstanding the verdict "shall be granted if it appears that the motion for directed verdict could properly have been granted." The test for allowing a motion for judgment notwithstanding the verdict is essentially the same as that for allowing a motion for directed verdict. *Dickinson v. Pake*, 284 N.C. 576, 201 S.E.2d 897 (1974). A motion by a defendant for a directed verdict under N.C. Gen. Stat. § 1A-1 Rule 50(a) of the Rules of Civil Procedure tests the legal sufficiency of the evidence to take the case to the jury and support a verdict for the plaintiff. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E.2d 678 (1977); *see also Eifler v. Pyles*, 94 N.C. App. 349, 380 S.E.2d 149 (1989). On such a motion, the plaintiff's evidence must be taken as true and the evidence must be considered in the light most favorable to the plaintiff, giving the plaintiff the benefit of every reasonable inference to be drawn therefrom. *Id.* A directed verdict for the defendant is not properly allowed unless it appears as a matter of law that a recovery cannot be had by the plaintiff upon any view of the facts that the evidence reasonably tends to establish. *Id.*

The "agreement" on which plaintiff's claim was founded was a resolution adopted at a special meeting of defendant's "Board of Directors" on 1 August 1988. As we have noted earlier, at that time plaintiff was the sole director of the defendant corporation. The resolution read as follows:

A special meeting of the Board of Directors was held at the office on August 1, 1988 at 11:00 A.M.

It was agreed that if Gary Schwartzbach should be removed as president, all his company stock must be bought by the Corporation at $1,000.00 each within thirty days of his removal. He will also receive six months severance pay.

The meeting was adjourned, as there was no further business.

Gary Schwartzbach

SCHWARTZBACH v. APPLE BAKING CO.

[109 N.C. App. 216 (1993)]

On 1 August 1988, the existing Business Corporation Act contained the following provisions:[1]

N.C. Gen. Stat. § 55-30 Director's Adverse Interest.

(b) No corporate transaction in which a director has an adverse interest is either void or voidable, if:

(1) With knowledge on the part of the other directors of such adverse interest, the transaction is approved in good faith by a majority, not less than two, of the disinterested directors present even though less than a quorum, irrespective of the participation of the adversely interested director in the approval, or if

(2) After full disclosure of all the material facts to all the shareholders, the transaction is specifically approved by the vote of a majority or by the written consent of all the voting shares other than those owned or controlled by the adversely interested directors, or if

(3) The adversely interested party proves that the transaction was just and reasonable to the corporation at the time when entered into or approved. In the case of compensation paid or voted for services of a director as director or as officer or employee the standard of what is "just and reasonable" is what would be paid for such services at arm's length under competitive conditions.

It is undisputed that plaintiff, the sole director at the time of the contested transaction, did not comply with either subsection (1) or (2) with respect to the transaction. Therefore, the only manner in which plaintiff could enforce the otherwise voidable transaction would be to satisfy the requirements of subsection (3).

It has long been the generally prevailing rule throughout the various courts of the United States and our State that directors and officers of a business corporation in charge of its management are, in the performance of their official duties, under obligations of trust to the corporation or its stockholders and must act in good faith and for the interest of the corporation or its stockholders.

---

1. Chapter 55 of the General Statutes has been completely rewritten and recodified effective 1 July 1990.

*See* 18B Am Jur 2d, Corporations, § 1684. North Carolina law has been consistent with this rule. *See e.g. Alford v. Shaw,* 320 N.C. 465, 358 S.E.2d 323 (1987); *Meiselman v. Meiselman,* 309 N.C. 279, 307 S.E.2d 551 (1983); *Fulton v. Talbert,* 255 N.C. 183, 120 S.E.2d 410 (1961). At the time the case at bar arose, G.S. § 55-35 spoke very plainly on this aspect of our law of corporations:

§ 55-35 Duty of Directors and Officers to Corporation.

> Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and to its shareholders and shall discharge the duties of their respective positions in good faith, and with that diligence and care which ordinarily prudent men would exercise under similar circumstances in like positions.

Speaking more directly to the specific transaction in this case, one leading authority has generally analyzed and explained the law of this State, as follows. Prior to the enactment of G.S. § 55-30(b), the applicable common law rule governing transactions between directors and officers and their corporations was one of presumptive invalidity, due to the good faith and undivided loyalty required of such persons serving the corporation in their fiduciary capacity. *See Robinson on North Carolina Corporation Law, 3rd Ed.,* § 12-11 and § 12-13. The purpose of the enactment of G.S. § 55-30(b) was to clarify the previously uncodified rules relating to transactions of interested directors. *Id.* § 12-11. Those seeking to sustain such a transaction must prove that it was openly and fairly made. *Id.*

In interpreting the provisions of G.S. § 55-30(b)(3), the 4th Circuit Court stated the rule as follows:

> It is a settled rule that a corporate officer acts in a fiduciary capacity and cannot profit at the expense of the corporation. . . . [T]he adversely influenced party must prove that the transaction was fair, just, and reasonable when entered into. *Smith v. Robinson,* 343 F.2d 793 (4th Cir. 1965).

Plaintiff's evidence in support of his claim included the resolution of 1 August 1988 and testimony from plaintiff relating to previous stock sales. The resolution on its face obviously cannot be said to be fair, just, or reasonable to the defendant under elemental principles of contract law; this transaction simply does not constitute an "agreement." The resolution does not reflect any consideration flowing to defendant, no promise by plaintiff to sell

## SCHWARTZBACH v. APPLE BAKING CO.

[109 N.C. App. 216 (1993)]

his shares to defendant, no forbearance in the form of a promise not to sell his shares to others, and no giving up by plaintiff of any benefit. Under this resolution, defendant would be forced to buy at a fixed price. Plaintiff would not be required to sell at any price.

On its face, the resolution purports to establish a value on plaintiff's stock at some then undetermined time in the future, a time at which it could not then be possible to predict or establish the value of plaintiff's stock. The only evidence plaintiff offered to support his version of the value of his stock were past transactions, sales which took place in 1984 (original subscriptions for $1,000 per share) and several instances where investors paid $1,000 a share in 1986. Plaintiff's opinion—that the "value" the defendant was receiving consisted of his shares comprising 17 percent of the company's stocks—is meaningless in the context of the requirements of the statute.

We hold as a matter of law that plaintiff failed to carry his burden of showing the subject transaction to be just and reasonable to defendant, and we reverse that part of the judgment.

### Defendant's Counterclaim

[2] In its last assignment of error, defendant corporation brings forward the trial court's refusal to instruct the jury that a finding against plaintiff on defendant's counterclaim concerning the $7,500 bonus he awarded himself necessarily dictated a finding of a breach of fiduciary duty and fraud as a matter of law. Defendant specifically takes exception to the trial court's instruction to the jury to award punitive damages only if they found aggravating circumstances. Defendant contends that plaintiff's failure to withstand G.S. § 55-30's "just and reasonable" test should lead to an assessment of punitive damages as a matter of law.

While there is arguable support for defendant's contention that a breach of a fiduciary duty is fraud as a matter of law,[2] we are unwilling to hold that every time a director is unable to carry his burden of proof in a G.S. § 55-30(b) analysis, he is automatically subject to punitive damages. A director might be biased in his assessment of the fairness of a self-dealing transaction,

---

2. *See Stone v. Martin,* 85 N.C. App. 410, 355 S.E.2d 255, *disc. rev. denied,* 320 N.C. 368, 360 S.E.2d 105 (1987).

and therefore his acts could fail to withstand G.S. § 55-30's "just and reasonable" analysis. Such evidence would not necessarily qualify as being the type of reckless or intentional behavior which would justify punitive damages. For that reason, we hold that an award of punitive damages is not an automatic right of a party who successfully establishes the invalidity of an adversely interested director's transaction under G.S. § 55-30, and that the trial court correctly instructed the jury to find aggravating circumstances before awarding punitive damages in this case.

## Plaintiff's Cross Appeal

In his purported cross appeal, plaintiff attempts to challenge the jury verdict awarding defendant the return of a $7,500 bonus that plaintiff awarded to himself as president of the company. Plaintiff has not perfected appeal from the judgment below, but attempts to bring forward this question under a "cross-assignment of error." This is not permissible. *See* Rule 10 of the North Carolina Rules of Appellate Procedure.

As to the plaintiff's recovery on his claim, the judgment below is reversed.

As to defendant's recovery on its counterclaim, no error.

Judges ORR and GREENE concur.